# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Board of Education of Schaumburg Community Consolidated School District No. 54 v. Teachers' Retirement System, 2013 IL App (4th) 120419**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF SCHAUMBURG COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 54, Plaintiff-Appellant, v. THE TEACHERS' RETIREMENT SYSTEM OF THE STATE OF ILLINOIS; THE BOARD OF TRUSTEES OF THE TEACHERS' RETIREMENT SYSTEM OF THE STATE OF ILLINOIS; and RICHARD W. INGRAM, Executive Director of The Teachers' Retirement System of the State of Illinois, Defendants-Appellees. |
| District & No. | Fourth District <br> Docket No. 4-12-0419 |
| Argued | December 5, 2012 |
| Filed | January 7, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | For purposes of plaintiff school district's retirement program and the raises provided to some of its administrators that were in excess of 6% of their salaries in years preceding their retirements, the Teachers' Retirement System's decision to deny plaintiff district's request for an exemption from an assessment based on those increases was upheld and the district was required to pay into the retirement system "the present value of the increase in benefits resulting from the portion of the increase in salary that is in excess of 6%," since the increases were pursuant to contracts "entered into, amended, or renewed" after June 1, 2005. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-638; the Hon. John Schmidt, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Andrew A. Malahowski (argued) and Scott R. Metcalf, both of Franczek Radelet P.C., of Chicago, for appellant. |
| | Ralph H. Loewenstein (argued), of Loewenstein, Hagen & Smith, P.C., of Springfield, for appellees. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Justices Appleton and Knecht concurred in the judgment and opinion. |

## OPINION

¶ 1    On October 28, 2011, the Board of Trustees for the Teachers' Retirement System of the State of Illinois (TRS) voted to uphold the recommended decision of TRS's claims hearing committee (Committee). *In re* Schaumburg Community Consolidated School District No. 54, The Board of Trustees of the Teachers' Retirement System (October 28, 2011). The Committee recommended denying the Board of Education of Schaumburg Community Consolidated School District No. 54's (District) request for an exemption from an assessment issued pursuant to section 16-158(f) of the Illinois Pension Code (Pension Code) (40 ILCS 5/16-158(f) (West 2008)) against the District because the District provided some of its administrators raises in excess of 6% in the years preceding their retirements pursuant to the District's voluntary retirement program (Retirement Program). In April 2012, the circuit court denied the District's request for administrative review. The District appeals, arguing TRS's interpretation of section 16-158(g) of the Pension Code (40 ILCS 5/16-158(g) (West 2008)) and sections 1650.483 and 1650.484 of title 80 of the Illinois Administrative Code (Administrative Code) (80 Ill. Adm. Code 1650.483, 1650.484 (2005)) is contrary to law and the plain language of its own regulations. We affirm the circuit court's affirmance of TRS's decision.

¶ 2                              I. BACKGROUND

¶ 3    On February 26, 2003, the District and its teachers' union agreed the Retirement Program would continue for the duration of the teachers' collective-bargaining agreement and would be available for retirements with an effective date prior to June 30, 2011. The term of the collective-bargaining agreement between the teachers' union and the District was July 1, 2003, to June 20, 2009. The District's board of education approved the Retirement Program on March 18, 2004.

¶ 4 Retired District administrators and now TRS annuitants Robert Dewing, Craig Gaska, Mary Marello, Judith McDonald, Robert Kaplan, Joyce Drenth, and Patrick Hayes received retirement incentives pursuant to "Option C" of the District's Retirement Program. "Option C" provided various retirement incentives to the administrators, including salary increases in excess of 6% per year.

¶ 5 The administrators at issue in this case did not have written contracts with the District nor were they union members covered by the collective-bargaining agreement between the teachers' union and the District. However, the District considered them entitled to benefits and retirement incentives under the Retirement Program. The administrators fulfilled the notice requirements of the Retirement Program. Pursuant to the incentives in the Retirement Program, each administrator's salary was increased by 20% over the prior years' compensation for the remaining two years.

¶ 6 TRS required the District to pay $586,387.81 plus interest of $1,245.81 into the Retirement System pursuant to section 16-158(f) of the Pension Code because the raises given by the District to the administrators exceeded 6%. The District claimed these raises were exempt and sought review of the assessment.

¶ 7 In its recommended decision, the Committee found the primary issue on administrative review had already been decided by TRS in *In re* Urbana School District No. 116, The Board of Trustees of the Teachers' Retirement System (August 7, 2008). The Committee found the District in this case, like the Urbana School District, ignored section 10-23.8a of the School Code (105 ILCS 5/10-23.8a (West 2008)), which governs the employment of administrators, by arguing the administrators were employed pursuant to employment policies and not employment contracts. While the administrators in this case did not have written employment contracts, the Committee found these administrators had one-year contracts by operation of law. As a result, according to the Committee's recommended decision, the administrators received the retirement incentives in question under nonexempt contracts.

¶ 8 As a result, the Committee found section 1650.484 of title 80 of the Administrative Code (80 Ill. Adm. Code 1650.484 (2005)) did not apply to the administrators in question in this case because the administrators had contracts by operation of law. According to the Committee:

"Section 1650.484 applies to a small group of TRS members, who are at-will employees such as certain employees of the Illinois State Board of Education, TRS and in the Regional Offices of Education. However, assuming arguendo that 1650.484 does apply to these administrators, according to paragraph (c) of the rule, they would have been assumed to have a one year contract running from July 1, 2005[,] to June 30, 2006. Even under this scenario, the administrators did not exercise their retirement incentive rights under the exempt contract and the retirement incentives were not paid under the exempt contract, making Schaumburg ineligible for exemption." *In re* Schaumburg Community Consolidated School District No. 54, Recommended Decision of the Claims Hearing Committee, at 9 (July 27, 2011).

As a result, the Committee found the assessment the District received was statutorily required under section 16-158(f) of the Pension Code (40 ILCS 5/16-158(f) (West 2008)).

¶ 9    On October 28, 2011, TRS made a final administrative decision, upholding the recommended decision of the Committee. In November 2011, the District filed a complaint for administrative review in the circuit court. The District asked the circuit court to reverse and set aside TRS's October 28, 2011, administrative decision. On April 4, 2012, the circuit court denied plaintiff's complaint for administrative review, thereby upholding the decision of TRS.

¶ 10   This appeal followed.

¶ 11                              II. ANALYSIS

¶ 12   According to our supreme court's decision in *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386, 925 N.E.2d 1131, 1142 (2010), "[w]hen an appeal is taken to the appellate court following entry of judgment by the circuit court on administrative review, it is the decision of the administrative agency, not the judgment of the circuit court, which is under consideration." Our supreme court also stated:

> "Judicial review of administrative decisions is subject to important constraints regarding the issues and evidence that may be considered. If an argument, issue, or defense was not presented in the administrative proceedings, it is deemed to have been procedurally defaulted and may not be raised for the first time before the circuit court. [Citation.] In addition, '[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct' and '[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court.' 735 ILCS 5/3-110 (West 2002). Consistent with these statutory mandates, we have held that 'it is not a court's function on administrative review to reweigh evidence or to make an independent determination of the facts.' [Citation.] When an administrative agency's factual findings are contested, the court will only ascertain whether such findings of fact are against the manifest weight of the evidence. [Citation.]

> The standard of review is different when the only point in dispute is an agency's conclusion on a point of law. There, the decision of the agency is subject to *de novo* review by the courts. Yet a third standard governs when the dispute concerns the legal effect of a given set of facts, *i.e.*, where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard. In such cases, which we have characterized as involving a mixed question of law and fact, an agency's decision is reviewed for clear error." *Provena*, 236 Ill. 2d at 386-87, 925 N.E.2d at 1142-43.

The District argues TRS's decision should be reviewed *de novo* because the issue before this court is whether TRS erred in interpreting the applicable statutes and regulations. TRS does not contest this standard of review. However, even when we apply a *de novo* review, our supreme court has stated an agency's construction of a statute or rule is entitled to substantial weight and deference. *Provena*, 236 Ill. 2d at 387 n.9, 925 N.E.2d at 1143 n.9.

¶ 13   Turning to the merits of this case, section 16-158(f) of the Pension Code (40 ILCS 5/16-158(f) (West 2008)) requires a teacher's employer to make additional payments to the

Teachers' Retirement System in certain situations, stating in pertinent part:

"If the amount of a teacher's salary for any school year used to determine final average salary exceeds the member's annual full-time salary rate with the same employer for the previous school year by more than 6%, the teacher's employer shall pay to the System, in addition to all other payments required under this Section and in accordance with guidelines established by the System, the present value of the increase in benefits resulting from the portion of the increase in salary that is in excess of 6%."

¶ 14 The parties agree the administrators in question are considered "teachers" under the Pension Code and received salary increases in excess of 6% after filing their individual notices of intent to retire. The parties also agree the raises in question were made pursuant to the District's Retirement Program, which was approved by the District prior to June 1, 2005. Based on the language of section 16-158(f), if no exemption applied, the District is required to contribute "the present value of the increase in benefits resulting from the portion of the increase in salary that is in excess of 6%" to the Retirement System.

¶ 15 However, section 16-158(g) provides a statutory grandfathering exemption, stating in pertinent part:

"This subsection (g) applies only to payments made or salary increases given on or after June 1, 2005 but before July 1, 2011. The changes made by Public Act 94-1057 shall not require the System to refund any payments received before July 31, 2006 (the effective date of Public Act 94-1057).

*When assessing payment for any amount due under subsection (f), the System shall exclude salary increases paid to teachers under contracts or collective bargaining agreements entered into, amended, or renewed before June 1, 2005.*" (Emphasis added.) 40 ILCS 5/16-158(g) (West 2008).

The District argues its Retirement Program, which was adopted by the District prior to June 1, 2005, should be treated as a grandfathered contract pursuant to section 16-158(g).

¶ 16 According to the District, TRS erred in failing to treat the contract as grandfathered for the following reasons.

"First, TRS misinterpreted the plain language of its administrative regulations, which clearly treat[s] employment policies such as the [Retirement Program] as exempt contracts under Section 16-158(g). Second, to reach this result, TRS misinterpreted the Illinois School Code's provisions on the employment of school administrators. Third, TRS misinterpreted or otherwise ignored Illinois contract law and other decisional law that had a material effect [*sic*] on its decision. In short, the entire administrative review reveals that TRS was prepared to assess and uphold contributions against the District regardless of the law." (Emphasis omitted.)

¶ 17 As to the District's argument TRS misinterpreted the plain language of its own administrative regulations, the District cites sections 1650.483 and 1650.484 of title 80 of the Administrative Code (80 Ill. Adm. Code 1650.483, 1650.484 (2005)). Section 1650.483(a) states:

"The exemptions from employer contributions provided under 40 ILCS 5/16-128(d-10)

and 40 ILCS 5/16-158(f) for those members who notify their employer of the intent to retire under the terms of an exempt contract or collective bargaining agreement but do not receive such incentives until after the expiration of the contract or collective bargaining agreement shall cease no later than three school years after the expiration of the contract or collective bargaining agreement or June 30, 2011, whichever is earlier." 80 Ill. Adm. Code 1650.483(a) (2005).

Section 1650.484, which is titled, "Members Not Covered by Collective Bargaining Agreements or Employment Contracts," provides as follows:

"a) For members not covered by collective bargaining agreements or employment contracts, the System will accept employment policies as evidence of a contractual agreement under which salary increases paid and sick leave granted shall be exempt from employer contributions under 40 ILCS 5/16-128(d-10) and 16-158(f).

b) Such policies must have been in effect prior to June 1, 2005.

c) Employees operating under employment policies will be deemed to be employed under a one school year contract for exemption from employer contribution purposes under 40 ILCS 5/16-128(d-10) and 16-158(f) unless the salary increases and/or granting of sick leave under the policy are governed by provisions in the employer's collective bargaining agreement, in which case the employer exemption shall end at the same time the exemption ends for that collective bargaining agreement." 80 Ill. Adm. Code 1650.484 (2005).

Pursuant to the aforementioned TRS regulations, the District argues its Retirement Program must be accepted as an exempt contract by TRS because the prerequisites of those regulations have been met, including the following: (1) the administrators in question were not covered by employment contracts with the District and were not union members covered by the collective-bargaining agreement; (2) the administrators fulfilled the notice requirements of the Retirement Program by submitting their notices of intent to retire prior to the expiration of the Retirement Program; and (3) the Retirement Program was approved by the District's board of education prior to June 1, 2005.

¶ 18       Relying on section 10-23.8a of the School Code (105 ILCS 5/10-23.8a (West 2008)), TRS argues the administrators at issue had employment contracts. Section 10-23.8a states in relevant part:

"Principal and other administrator contracts. After the effective date of this amendatory Act of 1997 and the expiration of contracts in effect on the effective date of this amendatory Act, school districts may only employ principals and other school administrators under either a contract for a period not to exceed one year or a performance-based contract for a period not to exceed 5 years, unless the provisions of Section 10-23.8b of this Code or subsection (e) of Section 24A-15 of this Code otherwise apply." 105 ILCS 5/10-23.8a (West 2008).

Whether the administrators in question were operating under an employment contract is a crucial question in this appeal. The District's argument it was exempt from extra contributions to the system pursuant to section 16-158(f) (40 ILCS 5/16-158(f) (West 2008)) relies heavily on section 1650.484 (80 Ill. Adm. Code 1650.484 (2005)). If the administrators

were operating under employment contracts, section 1650.484 of title 80 of the Administrative Code would not apply to this case, since it only applies to individuals working without a contract.

¶ 19 The District argues section 10-23.8a of the School Code (105 ILCS 5/10-23.8a (West 2008)) does not suggest an administrator without a written employment contract automatically has a one-year contract by operation of law. The District cites *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 104, 566 N.E.2d 1283, 1305 (1990), for the proposition a legal *presumption* exists in Illinois a legislative enactment is not intended to create private contractual rights.

¶ 20 According to the District, TRS cannot overcome the presumption section 10-23.8a did not create private contractual rights between the District and its administrators. However, as the appealing party before this court, it is the District's burden to explain why a contract between the District and the administrators was not created by operation of law pursuant to section 10-23.8a. The District simply argues, "Nowhere does [s]ection 10-23.8a suggest this result, nor does the statutory language suggest there is *any* result if a school district chooses to employ an administrator without an employment contract." We disagree.

¶ 21 Section 10-23.8a clearly states "school districts may *only* employ principals and other school administrators under either a *contract* for a period not to exceed one year or a performance-based contract for a period not to exceed 5 years." (Emphases added.) 105 ILCS 5/10-23.8a (West 2008). The legislature's use of the word "only" clearly limited the manner in which a school district can employ an administrator. The plain language of section 10-23.8a overcomes any presumption the statute was not intended to create a contract by law for at least a period of one year between administrators and the school district for which they work. The administrators in question had one-year contracts pursuant to section 10-23.8a, regardless of whether they entered into a written contract with the District. As a result, section 1650.484 of title 80 of the Administrative Code does not apply to the situation in this case.

¶ 22 However, even if the administrators in this case did not have employment contracts with the District, the District failed to establish its Retirement Program would qualify as an exempt grandfathered contract for the same period the collective-bargaining agreement between the District and its teachers' union qualified for an exemption. Section 1650.484(c) of title 80 of the Illinois Administrative Code (80 Ill. Adm. Code 1650.484(c) (2005)), which only concerns members of the retirement system not covered by collective-bargaining agreements or employment contracts, states:

"c) Employees operating under employment policies will be deemed to be employed under a one school year contract for exemption from employer contribution purposes under 40 ILCS 5/16-128(d-10) and 16-158(f) unless the salary increases and/or granting of sick leave under the policy are governed by provisions in the employer's collective bargaining agreement, in which case the employer exemption shall end at the same time the exemption ends for that collective bargaining agreement." 80 Ill. Adm. Code 1650.484 (2005).

The record does not reflect provisions in the collective-bargaining agreement governed the

salary increases provided by the Retirement Program.

¶ 23    The District points to a February 2003 agreement between the District and the teachers' union that the Retirement Program would be available for the duration of the teachers' collective-bargaining agreement. However, the record does not reflect this agreement between the District and its teachers' union was included in the terms of the collective-bargaining agreement. More important, as noted in the preceding paragraph, the District failed to establish the terms of the collective-bargaining agreement governed the salary increases at issue in this appeal.

¶ 24    The District also argues the Retirement Program was an independent contract for retirement incentives that qualified for an exemption pursuant to section 16-158(g) of the Pension Code (40 ILCS 5/16-158(g) (West 2008)). The District cites our supreme court's decision in *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 505 N.E.2d 314 (1987), for the proposition "a policy which is disseminated to employees and which could reasonably be understood as an offer is enforceable as a contract." The District ignores another requirement in the formation of a contract–acceptance of the offer.

¶ 25    In *Duldulao*, the plaintiff alleged she had been discharged from her employment in a manner that violated the terms of her employer's employee handbook. *Duldulao*, 115 Ill. 2d at 484, 505 N.E.2d at 315. Plaintiff claimed the handbook created enforceable contractual rights. *Duldulao*, 115 Ill. 2d at 484, 505 N.E.2d at 315. Our supreme court stated:

> "[W]e hold that an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." *Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.

The employee handbook in question explicitly stated: " 'Please take the time to become familiar with these policies. They are designed to clarify your rights and duties as employees. Your observance of these policies will produce a safe and pleasant environment in which to work and assure you a respected place in Saint Mary's family of employees.' " *Duldulao*, 115 Ill. 2d at 486, 505 N.E.2d at 316. By working for defendant after receiving the employee handbook, the plaintiff accepted the offered terms of employment contained in the employee handbook.

¶ 26    According to the District, section 16-158(g) of the Pension Code (40 ILCS 5/16-158(g) (West 2008)) "grandfathers all contracts entered into prior to June 1, 2005, generally–not just employment contracts or collective bargaining agreements." The District argues the Retirement Program "contract" is exempt because the District entered into the contract prior to June 1, 2005. The District's reasoning is faulty because the adoption of the Retirement Program by the District and its agreement to continue the program for the duration of the

collective-bargaining agreement between the District and its teachers' union is not the contract at issue in this appeal. The contract at issue is the contract formed by the District and the administrators once the administrators submitted their irrevocable notice of intent to retire. Participation in the Retirement Program was not a term of employment the administrators agreed to by working for the District after learning of the program. This was not a compulsory retirement program.

¶ 27    If an independent contract was formed by an administrator's agreement to take part in the Retirement Program, the contract was not formed until the administrator submitted his or her irrevocable notice of intent to retire under "Option C" of the Retirement Program. The notices in this case were submitted between December 2006 and November 2007. As a result, the salary increases at issue were paid to the administrators pursuant to contracts "entered into, amended, or renewed" after June 1, 2005, and therefore were not exempt. 40 ILCS 5/16-158(g) (West 2008).

¶ 28    Finally, the District argued TRS's decision in this case was predetermined and biased against the District. We find this argument has no merit.

¶ 29                                    III. CONCLUSION

¶ 30    For the reasons stated, we affirm the circuit court's affirmance of the decision of the Teachers' Retirement System Board of Trustees because the salary increases at issue were made pursuant to contracts "entered into, amended, or renewed" after June 1, 2005. Therefore, pursuant to section 16-158(f) of the Pension Code (40 ILCS 5/16-158(f) (West 2008)), the District was required to pay into the retirement system "the present value of the increase in benefits resulting from the portion of the increase in salary that is in excess of 6%."

¶ 31    Affirmed.