# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Department of Corrections v. Welch, 2013 IL App (4th) 120114**

---

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF CORRECTIONS, Plaintiff-Appellant, v. MARIAH WELCH; THE CIVIL SERVICE COMMISSION; CHRIS KOLKER, in His Official Capacity as Chairman of the Civil Service Commission; RAYMOND EWELL, in His Official Capacity as a Commissioner of the Civil Service Commission; BARBARA J. PETERSON, in Her Official Capacity as a Commissioner of the Civil Service Commission; ARES G. DALIANIS, in His Official Capacity as a Commissioner of the Civil Service Commission; and BETTY BUKRABA, in Her Official Capacity as a Commissioner of the Civil Service Commission, Defendants-Appellees. |
| District & No. | Fourth District Docket No. 4-12-0114 |
| Rule 23 Order filed Rule 23 Order withdrawn Opinion filed | April 10, 2013 June 3, 2013 April 10, 2013 |
| Held *(Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.)* | The Civil Service Commission had jurisdiction to consider defendant's administrative appeal from her discharge from her position as a correctional officer, since she was employed beyond her certification date, but the Commission's decision to decrease the administrative law judge's proposal of a 60-day suspension instead of a discharge to a 14-day suspension was reversed and the cause was remanded to the Commission with directions to reinstate the proposed 60-day suspension, since the Commission's decision was conclusory and arbitrary. |

| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-307; the Hon. John Schmidt, Judge, presiding. |
| --- | --- |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, Eric Truett and Clifford W. Berlow (argued), Assistant Attorneys General, of counsel), for appellant. |
| | Douglas J. Quivey (argued), of Londrigan, Potter & Randall, P.C., of Springfield, for appellee Mariah Welch. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General and Sharon A. Purcell, Assistant Attorney General, of counsel), for appellee Illinois Civil Service Commission. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justice Holder White concurred in the judgment and opinion. Justice Turner dissented, with opinion. |

## OPINION

¶ 1    Effective August 26, 2010, the Illinois Department of Corrections (Department) discharged Mariah Welch for cause. Following a March 2011 hearing on the merits of Welch's discharge, the administrative law judge (ALJ) found that Welch had violated the Department's rules but proposed a 60-day suspension was appropriate in lieu of discharge. In May 2011, the Illinois Civil Service Commission (Commission) adopted the ALJ's proposal but reduced the suspension period to 14 days. In January 2012, the circuit court affirmed.

¶ 2    The Department appeals, arguing (1) the Commission lacked jurisdiction to consider Welch's administrative appeal because she was not a "certified employee" when she was discharged; and (2) if the Commission had jurisdiction, this court should find Welch was properly discharged for cause and should reverse the Commission's decision on the merits or, in the alternative, should reinstate the ALJ's 60-day suspension recommendation because the Commission's decision to reduce Welch's suspension from 60 to 14 days was arbitrary, unreasonable, and unrelated to the requirements of service. We affirm in part, reverse in part, and remand with directions.

I. BACKGROUND

¶ 4 On January 4, 2010, Welch began her employment with the Department as a correctional officer trainee. During the first six weeks of her employment, she attended the Department's academy, where she received training regarding the Department's rules of conduct for correctional officers. On February 15, 2010, Welch began working at Robinson Correctional Center as a correctional officer in training. On March 29, 2010, she was officially appointed as a probationary correctional officer and was given a certification date (the date on which she would become a certified employee of the Department) of August 12, 2010.

¶ 5 In June 2010, an internal affairs officer for the Department questioned Welch, at which time she admitted she had (1) transported an inmate from one wing of the prison to another so he could deliver a burrito to another prisoner, (2) gave an inmate chewing gum–which inmates are not allowed to have–on three or four occasions, and (3) ate a nacho prepared by an inmate. On July 2, 2010, Welch was placed on "administrative leave" as a result of these actions. While on administrative leave, the Department continued to pay Welch her salary, but she was not allowed inside the facility. Following an employee review hearing later that month, (1) Welch was found to have violated the Department's policies and (2) the assistant warden, acting as hearing officer, recommended a 30-day suspension without pay pending discharge. The warden agreed with this recommendation. The Department returned Welch to work on August 11, 2010, but immediately placed her on "suspension pending discharge" with a September 12, 2010, date of return.

¶ 6 Effective August 26, 2010, the Department discharged Welch for cause after finding that she violated the Department's policies against (1) allowing trading and trafficking between offenders, (2) bringing contraband into the facility and trafficking it to an inmate, and (3) socializing with inmates. However, the Department also issued a probationary discharge notice with an effective date of September 10, 2010. Both the discharge for cause and the probationary discharge were approved on August 4, 2010, by agency head Michael Randle. On that same date, Randle also signed the suspension pending discharge document of which Welch was notified on August 10, 2010, by certified mail.

¶ 7 In September 2010, Welch requested a hearing before the Commission on her discharge. In October 2010, the Department filed a motion to dismiss, alleging that the Commission lacked jurisdiction over the claim because Welch was discharged during her probationary period and was not a "certified employee" entitled to a hearing. Specifically, the Department asserted that because Welch was placed on "administrative leave" for 40 days during the probationary period and later suspended pending discharge for 16 days, Welch's certification date was pushed back to October 6, 2010. As a result, the Department contended that Welch never reached certified employee status–a necessary designation to invoke the Commission's jurisdiction.

¶ 8 Following oral argument on the Department's motion to dismiss, the ALJ determined that the Commission had jurisdiction and denied the motion. Specifically, the ALJ found the Department's arguments unpersuasive that the 40-day "administrative leave" and 16-day "suspension pending discharge" extended Welch's probationary period because neither

"administrative leave" nor "suspension pending discharge" is specified in section 302.300(e) of title 80 of the Illinois Administrative Code (Administrative Code) (80 Ill. Adm. Code 302.300(e) (2010)) as one of the many types of leave listed that may extend an employee's probationary period. The ALJ also noted as follows: (1) the Department failed to provide any authority to support its contention that "administrative leave" and a "leave of absence" are the same thing; (2) it was disingenuous for the Department to claim a probationary period extension was necessary to monitor Welch's job performance when the Department purposely took action to prevent itself from monitoring Welch by placing her on involuntary administrative leave; and (3) contrary to the Department's assertion, "suspension pending discharge" and a "disciplinary suspension" are not the same thing. Thus, the ALJ concluded Welch became a certified employee on August 12, 2010–prior to her August 26, 2010, discharge–and therefore the Commission had jurisdiction over her appeal.

¶ 9      In March 2011, the ALJ held a hearing on the merits of Welch's discharge appeal. The ALJ found that Welch had violated the Department's rules but proposed a 60-day suspension without pay in lieu of discharge.

¶ 10      In May 2011, the Commission adopted the ALJ's proposal as modified, finding Welch's rule violations warranted a 14-day suspension in lieu of discharge because the preponderance of the evidence indicated the violations she committed were minimal within the context of Robinson's past practices.

¶ 11      In June 2011, the Department filed a complaint in the circuit court seeking administrative review of the Commission's order. The Department alleged that the Commission lacked jurisdiction to consider Welch's discharge appeal, and its decision was otherwise arbitrary and capricious, against the manifest weight of the evidence, contrary to mandatory Department policies, and contrary to sound public policy. In January 2012, the circuit court affirmed the Commission's decision without a written opinion.

¶ 12      This appeal followed.


¶ 13                                    II. ANALYSIS

¶ 14      On appeal, the Department argues (1) that the Commission lacked jurisdiction to consider Welch's administrative appeal because she was not a certified employee when she was discharged; and (2) if the Commission had jurisdiction, its decision to reduce Welch's discipline from discharge to a 14-day suspension was arbitrary, unreasonable, and unrelated to the requirements of service. Welch responds that (1) she was a certified employee at the time of discharge and, thus, the Commission properly exercised its jurisdiction to hear her appeal; and (2) the Commission's decision to reduce the level of discipline was proper considering Robinson Correctional Center's past practices. The Commission also submitted a brief maintaining it had jurisdiction over Welch's administrative appeal.


¶ 15                          A. Commission's Jurisdiction
¶ 16                                1. *Standard of Review*
¶ 17      In administrative review cases, we review the decision of the administrative agency,

-4-

rather than the judgment of the circuit court. *Board of Education of Schaumburg Community Consolidated School District. No. 54 v. Teachers' Retirement System*, 2013 IL App (4th) 120419, ¶ 12, 984 N.E.2d 66 (quoting *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386, 925 N.E.2d 1131, 1142 (2010)). Whether the Commission had jurisdiction to consider Welch's administrative appeal is a question of law subject to *de novo* review. *Department of Revenue v. Civil Service Comm'n*, 357 Ill. App. 3d 352, 361, 827 N.E.2d 960, 968 (2005). However, "the interpretation of a statute by involved administrative bodies constitutes an informed source for guidance when seeking to ascertain the legislature's intention when the statute was enacted." (Internal quotation marks omitted.) *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 609, 900 N.E.2d 1095, 1104 (2008). Thus, while not binding or absolute, the Commission's interpretation of title 80 of the Administrative Code is given substantial deference. *Denton v. Civil Service Comm'n of the State of Illinois*, 176 Ill. 2d 144, 148, 679 N.E.2d 1234, 1236 (1997).

¶ 18                                2. *Welch's Employee Status*

¶ 19       Whether the Commission had jurisdiction over Welch's discharge appeal depends on whether Welch was a "certified" or "probationary" employee at the time of her discharge. See 80 Ill. Adm. Code 1.130(a) (2010) (giving the Commission jurisdiction to hear appeals brought by certified employees). Section 302.625 of title 80 of the Administrative Code provides as follows:

> "For purpose of rules respecting discipline and discharge, 'certified employee' shall mean any employee currently employed in a position subject to jurisdiction B who has satisfactorily completed a required period of probation and attained certified status in any position during the employee's most recent period of continuous State service." 80 Ill. Adm. Code 302.625 (2010).

¶ 20       According to the Department, Welch was not a "certified employee" for purposes of section 302.625 of title 80 of the Administrative Code, since (1) she did not complete her probationary period because the 40-day "administrative leave" she was placed on constituted a "leave of absence" that extended her probation period beyond her discharge date; and (2) she did not "satisfactorily complete" her probationary period given that she violated numerous Department rules, was placed on administrative leave, and was suspended pending discharge. Welch and the Commission disagree, asserting (1) "administrative leave" is not a "leave of absence" and, thus, placing Welch on "administrative leave" did not extend her probationary period; and (2) the only requirement for satisfactorily completing the probationary period is reaching the certification date.

¶ 21                                a. Probationary Term

¶ 22       Pursuant to section 302.300(a) of title 80 of the Administrative Code, as a new employee, Welch was required to serve a probationary period of six months before becoming a "certified employee." 80 Ill. Adm. Code 302.300(a) (2010). Section 302.300(e) further provides as follows:

> "If an employee is absent from work for more than 15 consecutive calendar days during

the probationary period because of leave of absence, disciplinary suspension, sick leave, unauthorized absence, or work related injury or industrial disease, the absence shall serve to extend the probationary period by the length of the absence." 80 Ill. Adm. Code 302.300(e) (2010).

¶ 23    The Department first contends that Welch did not complete the required six-month probationary period because the 40-day "administrative leave" it placed her on falls under a "leave of absence" in section 302.300(e) of title 80 of the Administrative Code and, thus, Welch's probationary period was extended 40 days beyond her initial certification date of August 12, 2010. Welch and the Commission disagree, asserting that in the context of the Administrative Code "administrative leave" is not a "leave of absence." We agree with Welch and the Commission.

¶ 24    Section 302.300(e) of title 80 of the Administrative Code provides a list of certain types of leave that may extend an employee's probationary period. The types of absences specifically listed include disciplinary suspensions, sick leave, unauthorized absences, absences due to work-related injuries or industrial disease, and more generally, leaves of absence. 80 Ill. Adm. Code 302.300(e) (2010). While the Department acknowledges "administrative leave" is not specifically enumerated in section 302.300(e), it contends that as generally defined "administrative leave" falls under the umbrella of "leave of absence."

¶ 25    Initially, we note contrary to the Department's assertion, the Commission did not find that an absence must be voluntary for it to be a "leave of absence." Rather, the Commission adopted the ALJ's conclusion that a "leave of absence *can* be voluntary on the part of the employee." (Emphasis added.) We agree that a "leave of absence" can be voluntary. It can also be involuntary. The only issue here is whether "administrative leave" is a "leave of absence" under section 302.300(e) of title 80 of the Administrative Code.

¶ 26    In support of its contention that a "leave of absence" does not include "administrative leave," the Commission points out that section 303, subpart B of title 80 of the Administrative Code, entitled "Leave of Absence," sets forth a lengthy list of leaves of absence available to employees and describes the conditions surrounding their use. This list includes the following: sick leave, veteran's hospital leave, furlough, leave for personal business, maternity/paternity and adoption leave, leave in the event of a stillborn child, leave for on-the-job injury or industrial disease, leaves of absence without pay, leave to attend union conventions, disability leave, family responsibility leave, organ donor leave, leave to take exempt position, military and peace corps leave, family military leave, civil air patrol leave, military reserve training and reserve call-up, military physical exams, disaster service leave with pay, attendance in court, authorized holidays, and vacation. 80 Ill. Adm. Code 303.90 to 303.295. However, "administrative leave" does not appear on this extensive list. Rather, as both Welch and the Commission point out, "administrative leave" appears under the discharge and discipline section of title 80 of the Administrative Code and is identified as a measure to be used only in extraordinary circumstances when no other type of leave is appropriate. 80 Ill. Adm. Code 302.795(a) (2010).

¶ 27    The Department argues "leave of absence" in section 302.300(e) was meant to be an "umbrella" term to cover all types of leave in order to prevent errors of omission, or to

otherwise include new types of leave added at a later time so that the agency would not be required to amend section 302.300(e) every time it identified a new type of leave intended to extend an employee's probationary period. The Department acknowledges that in the past decade, three new forms of leave have been added to the "leave of absence" section of title 80 of the Administrative Code: (1) leave in the event of a stillborn child (80 Ill. Adm. Code 303.131 (eff. Apr. 23, 2009)); (2) organ donor leave (80 Ill. Adm. Code 303.149 (eff. May 23, 2003)); and (3) disaster service leave in the event of a terrorist attack (80 Ill. Adm. Code 303.176 (eff. Jan. 18, 2002)). Each of these three new types of leave is identified as a "leave of absence" in section 303, whereas "administrative leave" was added to section 302 of the Personnel Rules governing discipline and discharge. Further, the "administrative leave" section was added in 2005, after the addition of organ donor leave and disaster service leave in the event of a terrorist attack, and prior to the addition of leave in the event of a stillborn child. Thus, contrary to the Department's assertion, it does not appear "leave of absence" in section 302.300(e) is a term meant to comprehensively encompass all types of leave.

¶ 28    The Department further argues that the Commission erred in failing to find the "suspension pending discharge" was a "disciplinary suspension" under section 302.300(e) which tolled Welch's probationary period. We disagree.

¶ 29    Section 302.300(e) specifies "disciplinary suspension" as a type of absence that extends the probationary period but it does not refer to "suspension pending discharge." As noted by the ALJ, these two types of suspensions are located within different sections of the Administrative Code. "Suspension pending discharge" is found at section 302.710, while "disciplinary suspension" is found at section 302.640 (suspension totaling not more than 30 days in any 12-month period) and section 302.660 (suspension totaling more than 30 days in any 12-month period). A review of these Administrative Code sections makes it clear that suspension pending discharge and disciplinary suspension are separate and distinct disciplinary procedures. Thus, just as an "administrative leave" fails to extend the probationary period of an employee, neither does a "suspension pending discharge."

¶ 30    Further, even if we found that "suspension pending discharge" and "disciplinary suspension" were the same–and we do not–section 302.300(e) of title 80 of the Administrative Code states, "If an employee is absent from work for *more than 15 consecutive calendar days during the probationary period*, *** the absence shall serve to extend the probationary period by the length of the absence." (Emphasis added.) 80 Ill. Adm. Code 302.300(e) (2010). Thus, contrary to the Department's contention, this language makes it clear that in order to extend an employee's probationary period, the employee must be consecutively absent, for one of the enumerated reasons, for *more than 15 days during the probationary period*. Because Welch was not placed on "suspension pending discharge" until August 11, 2010, and her certification date was August 12, 2010, Welch was not absent for more than 15 consecutive calendar days during her probationary period.

¶ 31                    b. Satisfactory Completion of Probation Term

¶ 32    Independent of whether the administrative leave or suspension pending discharge extended Welch's probationary term, the Department asserts Welch was not a "certified

-7-

employee" because she did not "satisfactorily complete" her probationary period under section 302.625 given that she violated numerous Department rules, was placed on administrative leave, and was suspended pending discharge within her first 135 days of employment. Welch and the Commission disagree, contending an employee automatically becomes "certified" by completing the probationary period without being discharged. They argue no further test is required to determine whether a probationary employee successfully completed his or her probationary period.

¶ 33    As stated above, section 302.625 of title 80 of the Administrative Code provides that a " 'certified employee' " is one "who has *satisfactorily completed* a required period of probation and attained certified status." (Emphasis added.) 80 Ill. Adm. Code 302.625 (2010). The Department cites no authority to support its argument that Welch did not "satisfactorily complete" her probationary period because she did not meet the employer's standards, expectations, and requirements. Instead, the Department engages in a lengthy discussion of various dictionary definitions of "satisfactory" and "complete." However, as the Commission notes, during the November 2010 hearing to determine whether the Commission had jurisdiction over Welch's appeal, the following discussion occurred:

> "[ALJ]: All right. Is there anything regarding certification of this employee that goes beyond just simply time on the job? I guess it's a horrible question. But is there a test that needs to be passed or is there anything else that needs to be done in order to complete the certification as it relates to this position?

> [Counsel for the Department]: Not to my knowledge. Attached to our motion there is–as Exhibit C there is a Supplemental Agreement between CMS and AFSCME for correctional officers. And if you look at the second page of that exhibit there is a timeline there, and I believe that that's the only qualification for becoming certified."

Only after the ALJ's proposed decision did the Department shift its position on what is required for certification. Further, as the Commission notes, the Department initially discharged Welch "for cause," as is required for "certified" employees.

¶ 34    The dissent takes issue with the Commission's finding that Welch "satisfactorily completed" her probation, noting Welch's disciplinary issues as previously discussed. It argues an employee must not only have completed the probationary period timewise but must also have done so in accordance with some undefined qualitative standard in order to become a certified employee. The dissent's interpretation of "satisfactorily completed" is contrary to the Commission's interpretation which, as noted, is entitled to substantial deference by this court. Moreover, the dissent fails to address the consequences of allowing the employer to evaluate the employee's probationary performance *after* the probationary period has ended. As stated by the Commission in its brief, an employer may discharge an employee at any time during the probationary period for other than invidious reasons. Once an employee has completed her probationary period, though, she can only be discharged for cause. Applying the dissent's interpretation, an employer could look back at a long-standing employee's initial probationary term, find documented shortcomings in her job performance during that period, and discharge the employee based on grounds other than for cause simply by finding the employee had not "satisfactorily" completed her probationary period. It seems unlikely

-8-

the drafters of section 302.625 (80 Ill. Adm. Code 302.625 (2010)) could have intended such a result.

¶ 35    Absent any authority to the contrary, the Commission could reasonably conclude the only requirement for satisfactorily completing the probationary period is to reach the certification date. If the Department was not satisfied with Welch's job performance, it could have discharged her at any time during the probationary period, but it did not. Instead, the Department chose to place Welch on "administrative leave" from July 2, 2010, through August 10, 2010, and "suspension pending discharge" on August 11, 2010–neither of which is a type of leave that extends the probationary period. Because Welch was not discharged prior to her certification date, she "satisfactorily completed" her probationary period and automatically became a certified employee on August 12, 2010.

¶ 36                B. Commission's Decision To Reduce Discipline

¶ 37    The Department next argues if the Commission had jurisdiction, this court should find Welch was properly discharged for cause and should reverse the Commission's decision on the merits or, in the alternative, should reinstate the ALJ's 60-day suspension recommendation because the Commission's decision to reduce Welch's suspension from 60 to 14 days was arbitrary, unreasonable, and unrelated to the requirements of service.

¶ 38                        1. *Standard of Review*

¶ 39    " 'In discharge cases, "[t]he scope of review of an administrative agency's decision regarding discharge is generally a two-step process involving first, a manifest-weight standard, and second, a determination of whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist." ' " *Department of Juvenile Justice v. Civil Service Comm'n*, 405 Ill. App. 3d 515, 521, 939 N.E.2d 54, 59-60 (2010) (quoting *Department of Human Services v. Porter*, 396 Ill. App. 3d 701, 718, 921 N.E.2d 367, 380 (2009), quoting *Brown v. Civil Service Comm'n*, 133 Ill. App. 3d 35, 39, 478 N.E.2d 541, 544 (1985)). An agency's factual findings will be reversed only if they are against the manifest weight of the evidence, whereas the agency's discharge determination will be reversed only if it is arbitrary, unreasonable, or unrelated to the requirements of service. *Id.* at 522, 939 N.E.2d at 60. Further, a reviewing court may reverse a sanction imposed by the agency if the agency acted unreasonably. *Id.* However, the question is not whether the reviewing court would have imposed a harsher or more lenient penalty, but whether the Commission substantiated its decision. *Id.* at 524-25, 939 N.E.2d at 62.

¶ 40    2. *The Department's Claim That Welch Was Properly Discharged for Cause*

¶ 41    As a preliminary matter, we note that neither the ALJ nor the Commission found grounds shown to discharge Welch for cause. Our review of the record supports this finding. The Commission's determination that Welch's conduct did not warrant discharge was not against the manifest weight of the evidence.

-9-

¶ 42    3. *The Department's Claim That the Commission's Decision Was Arbitrary*

¶ 43    The Department also argues that the Commission's decision to adopt the ALJ's findings of fact, but reduce Welch's recommended suspension from 60 to 14 days, was arbitrary. Specifically, the Department contends that the Commission's cursory decision provides no explanation of why it chose to reduce the discipline from the recommended 60-day suspension to a 14-day suspension. We agree.

¶ 44    It is well established that, where the Commission adopts an ALJ's decision but disagrees with the appropriate discipline to be imposed, it must make specific findings of fact or conclusions of law to support its decision to increase or decrease the proposed level of discipline; otherwise its decision is wholly conclusory and arbitrary. See, *e.g.*, *Austin v. Civil Service Comm'n*, 247 Ill. App. 3d 399, 404-05, 617 N.E.2d 349, 353 (1993); *Bell v. Civil Service Comm'n*, 161 Ill. App. 3d 644, 649-50, 515 N.E.2d 248, 251-52 (1987).

¶ 45    After hearing the evidence in this case, the ALJ found that Welch violated the Department's rules and her violations were consequential. However, the ALJ determined that given the pattern of conduct by other experienced correctional officers "who routinely engaged in similar misconduct," discharging Welch was too severe a sanction. Instead, the ALJ found a 60-day suspension was appropriate. The Commission agreed that Welch's conduct warranted a suspension rather than discharge and found as follows:

"It is hereby determined that the written charges for discharge approved by the Director of the Illinois Department of Central Management Services have been proved and warrant a 14-day suspension because the preponderance of the evidence indicates that the violations were minimal within the context of Robinson Correctional Center's past practice."

¶ 46    Welch asserts that the Commission justified its decision by explaining that the evidence indicated her violations were "minimal." We acknowledge that the Commission labeled Welch's violations as "minimal" whereas the ALJ referred to them as "consequential"; however, both the ALJ and the Commission based their overall findings that discharge was not warranted on the fact that other correctional officers had engaged in similar conduct and had not been discharged. Labeling Welch's violations as "minimal" as opposed to "consequential" is not a specific finding of fact or conclusion of law that supports the Commission's decision to decrease Welch's suspension from 60 to 14 days when the reason given by the Commission, *i.e.*, that other employees who engaged in similar conduct were not discharged, was the same reason the ALJ considered in making its determination that a 60-day suspension was appropriate. Thus, the Commission's decision to decrease Welch's suspension is wholly conclusory and arbitrary.

¶ 47    Because we find the Commission's decision to reduce Welch's suspension from 60 days to 14 days was arbitrary, we need not address whether the Commission's decision was also unreasonable or unrelated to the requirements of service. We reverse and remand with directions to reinstate the 60-day suspension proposed by the ALJ.

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated, we affirm the circuit court's judgment affirming the Commission's

decision that it had jurisdiction but reverse the Commission's decision to decrease Welch's suspension. We remand to the circuit court with directions to remand to the Commission directing it to reinstate the 60-day suspension proposed by the ALJ.

¶ 50        Affirmed in part and reversed in part; cause remanded with directions.

¶ 51        JUSTICE TURNER, dissenting.

¶ 52        The majority finds "the Commission could reasonably conclude the only requirement for satisfactorily completing the probationary period is to reach the certification date." *Supra* ¶ 35. I cannot agree with this finding. Therefore, I respectfully dissent.

¶ 53        In the case *sub judice*, the majority concludes that "[b]ecause Welch was not discharged prior to her certification date, she 'satisfactorily completed' her probationary period and automatically became a certified employee on August 12, 2010." *Supra* ¶ 35. "Probation" is the "subjection of an individual to a period of testing and trial to ascertain fitness (as for a job or school)." Merriam-Webster's Collegiate Dictionary 926 (10th ed. 2000). Thus, by definition, Welch was undergoing a period of review to determine her ability to perform as a correctional officer. I find it hard to fathom how the Commission can conclude Welch "satisfactorily" completed that probationary period after she allowed trading and trafficking between offenders, brought contraband into the facility and trafficked it to an inmate, socialized with inmates, and was placed on administrative leave as a result.

¶ 54        The majority states, "The Department cites no authority to support its argument that Welch did not 'satisfactorily complete' her probationary period because she did not meet the employer's standards, expectations, and requirements." *Supra* ¶ 33. In my view, this is a matter of common sense. The word "satisfactorily" has to mean something. In essence, the Commission, and now the majority, have erased the word "satisfactorily" from section 302.625 of title 80 of the Administrative Code and concluded that so long as the employee can cross the finish line of the certification date, the probationer's performance and conduct make no difference. I further note *People ex rel. Sterba v. Blaser*, 33 Ill. App. 3d 1, 337 N.E.2d 410 (1975), cited in defendants' briefs and argued at orals as controlling, is manifestly distinguishable. In that case, the employee was not notified or in any way alerted to his unsatisfactory conduct until after the probationary term had expired. *Sterba*, 33 Ill. App. 3d at 6-7, 337 N.E.2d at 414-15. That is decidedly not the situation here. I would find the Commission had no jurisdiction over Welch's complaint because she had not reached the status of a certified employee when she was discharged. Thus, I would reverse the circuit court and vacate the Commission's decision.